[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This property tax appeal requires the court to determine the fair market value of an is1and. The judicial task is a challenging one, both because of the unique nature of the subject property and because of the fact that neither of the competing expert witnesses gave credible testimony.
The island in question is Tuxis Island (the "Island"). The valuation date is October 1, 1990. The defendant Board of Assessment Appeals has assessed the fair market value of the Island as $466,500 as of the valuation date. This appeal was timely filed in 1997. The appeal was heard on March 15 and May 9, 2001.
The Island consists of 2.8 acres of unimproved land. It is located approximately 1,100 feet from the shore of its owner, the plaintiff Madison Beach Club (the "Club"). The credible testimony of J. Bradford Allen, Madison's acting harbormaster, establishes that the Island has no dock and no real harbor. Whether the necessary permits to build a dock could ever be obtained from the necessary state and federal authorities is entirely speculative. It is difficult to get on the Island at high tide or in rough weather. It is possible to get on the Island at low tide (in good weather) from an anchored boat, but the visitor's feet will get wet in the process. Even this can be done only at one small location on CT Page 6149 the north side of the Island. The launching point for a visiting boat is also problematic. There is no ferry service. The closest takeoff point for a boat is the Club, but the Club is a private organization with restricted membership and, in any event, has docks in place only in the summer months. East and West Wharves are several hundred yards away and are strictly for small boats. Larger boats would have to be launched from Clinton or Guilford, perhaps twenty to forty minutes away.
Archival material establishes that a YMCA camp was on the Island early in the last century. That camp was last used in the 1920's. The buildings used by the camp have been gone for many decades. The Island has no utilities or sanitation facilities of any kind. There is no evidence that the Island has any potable water. There is some evidence that it has an ample supply of poison ivy.
The plaintiff's expert testified that the fair market value of the Island on the valuation date was $15,000. The defendant's expert testified that the Island's value was $560,000. Neither of these opinions is credible. Each of the competing appraisals is based on the comparable sales method of analysis. While there is nothing theoretically wrong with this method (the Island is undeveloped and produces no income), unhappily, none of the asserted comparable sales are, in fact, comparable.
The plaintiffs comparables will be considered first. None of the these comparables are islands. They are, instead, mainland properties, most of which are not even located in coastal towns. (One, for example, is located in Wallingford.) None of these properties can remotely be considered as having the attractions (and thus the sales potential) of an island.
The defendant's comparables are islands, but just as the plaintiffs expert errs on the low end of the economic spectrum, the defendant's expert errs on the high end. Four of the defendant's six comparables are located in the Thimble Islands. These well-known islands off the coast of Branford are developed islands with docks, utilities, ferry service, and houses already in place. The defendant's fifth comparable is the southern portion of Andrews Island, off the coast of Stonington. Andrews Island has both utilities and a dock. The sales price additionally includes a part-interest in a dockominium in Stonington. The defendant's sixth and final comparable is a 3.9 acre parcel on Sheffield Island, off the coast of Norwalk. Sheffield Island has utilities and regular boat service. In addition to this concern, the Fairfield County real estate market is not comparable to the rest of Connecticut.
In all of these cases, the purchasers of these asserted comparables CT Page 6150 were purchasing accessible properties that could be visited and enjoyed with comparative ease. That is simply not the case with the Island in question here. It is difficult to envision a potential (and presumably wealthy) purchaser spending many hundreds of thousands of dollars on an island without the minimal assurance of accessibility. (As mentioned, acting harbormaster Allen credibly testified that there was no assurance that the necessary permits to build a dock on the Island could ever be obtained.)
One final consideration of considerable importance in this court's experience is the valuation date: October 1, 1990. As is very well known, this date occurred in the midst of a low point in Connecticut's real estate market.
For these reasons, neither of the parties' appraisals is persuasive. The actual fair market value of the Island plainly lies between these competing figures.
One useful hint of the actual fair market value is provided by the Island's last purchase price. The Island was last purchased in 1958 for $13,000. Adjusted for inflation, this was approximately $59,000 in 1990 dollars. (Inflation Calculator, Bureau of Labor Statistics, available athttp://www.bls.gov.) This figure, however unsatisfactory, is closer to the mark than the values proposed by the competing experts. The evidence does not reveal whether this was an arms length transaction. It is appropriate to adjust this cost figure modestly upwards to account both for the possibility that the 1958 sale may not have been an arms length transaction and for the fact that, even in 1990, a five-figure price for an island off the coast of Madison would have been an unusually good bargain. With these considerations in mind, the court finds that the fair market value of the subject property on the valuation date was $100,000.
The appeal is allowed. Judgment shall enter for the plaintiff.
 ___________________________ Jon C. Blue Judge of the Superior Court